THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| CHINOOK LICENSING DE, LLC,<br>a Delaware Limited Liability Company,<br><br>        Plaintiff<br><br>v.<br><br>ROZMED LLC, a Virginia limited liability company, IRON DOME LLC, a Virginia limited liability company, JOHN J. YIM & ASSOCIATES LLC, a Virginia limited liability company, STEVEN S. YU, AND JOHN J. YIM,<br><br>        Defendants | C.A. No. 14-598-LPS<br><br>JURY TRIAL DEMANDED |

## FIRST AMENDED COMPLAINT

This is an action to curtail and remedy the improper, fraudulent and unlawful conduct by RozMed LLC, Iron Dome LLC, John J. Yim & Associates LLC, Steven S. Yu, and John J. Yim (collectively, "Defendants"). Plaintiff Chinook Licensing DE, LLC ("Chinook"), by its attorneys, brings this action for relief against Defendants for tortious interference with Chinook's business relations.

## PARTIES

1.  Plaintiff Chinook Licensing DE, LLC is a Delaware limited liability company with a place of business at 320 Wilmette Avenue, Glenview, Illinois 60025.

2.  On information and belief, Defendant RozMed LLC is a limited liability company organized and existing under the laws of the State of Virginia with its principal place of business at 9810 Cresence Way, Fairfax, Virginia 22032. RozMed's members include at least Steven S.

Yu, a citizen of the state of Maryland. RozMed LLC can be served via its registered agent, Hungju Yu, at 9810 Cresence Way, Fairfax, Virginia 22032.

3. On information and belief, Defendant Iron Dome LLC is a limited liability company organized and existing under the laws of the State of Virginia, a citizen of the state of Virginia with its principal place of business at 501 Watkins Pond Blvd, Rockville, Maryland 20850. Iron Dome LLC's members include at least Steven S. Yu, a citizen of the state of Maryland. Iron Dome LLC is a wholly –owned subsidiary of RozMed LLC. Iron Dome can be served via its registered agent, RozMed LLC, at 9810 Cresence Way, Fairfax, Virginia 22032.

4. On information and belief, Defendant John J. Yim & Associates LLC is a limited liability company organized and existing under the laws of the State of Virginia with its principal place of business at 7600 Leesburg Pike, East Building, Suite 470, Falls Church, Virginia 22043. John J. Yim & Associates LLC's members include at least John J. Yim, a citizen of the state of Virginia. John J. Yim & Associates can be served via its registered agent, John J. Yim, at 7600 Leesburg Pike, East Building, Suite 470, Falls Church, Virginia 22043.

5. On information and belief, Defendant Steven S. Yu is an individual residing in Rockville, Maryland and a citizen of the State of Maryland. Steven Yu is a managing member of RozMed LLC and principal of Iron Dome LLC.

6. On information and belief, Defendant John J. Yim is an individual residing in Falls Church, Virginia. John Yim is the managing partner of John J. Yim & Associates LLC.

## JURISDICTION AND VENUE

7. This Court has diversity jurisdiction pursuant to 28 U.S.C. § 1332. Complete diversity exists between Plaintiff – a citizen of Delaware - and Defendants – citizens of either

Virginia or Maryland - and the amount in controversy is in excess of $75,000. Further, this Court has jurisdiction over Chinook's RICO claims under the RICO Act, 18 U.S.C. §§ 1961, *et seq.*

8. This Court has personal jurisdiction over all Defendants pursuant to the Delaware Long-Arm Statute, 10 DEL. CODE. ANN. Tit. 3, § 3104, by virtue of Defendants' actions bringing about this cause of action, as alleged herein, and causing injury to Chinook.

9. Venue is proper in this district under 28 U.S.C. § 1391 because, among other reasons, Defendants are subject to personal jurisdiction in this District and because of Defendants' actions within this District giving rise to this cause of action.

**FACTUAL BACKGROUND**

10. Chinook is in the business of licensing patents that it owns and defending its patent rights against wrongful infringers of those rights.

11. Chinook owns United States Patent No. 7,047,482 (the "'482 patent").

12. Chinook has asserted the '482 patent against several companies for patent infringement in the United States District Court for the District of Delaware. These matters are pending before Judge Stark.

13. Several of the companies against whom Chinook has asserted the '482 patent have settled their respective patent disputes by obtaining a license from Chinook to continue their use of the '482 patent.

14. Litigation is ongoing with several remaining defendants in pending patent infringement actions; however, Chinook continues to work towards resolving its disputes with those remaining companies.

15. Stephen B. Brauerman, Esquire is Chinook's Delaware counsel handling the litigation of the '482 patent in Delaware. His office address is 222 Delaware Avenue, Suite 900, Wilmington, DE 19801.

**Defendants Scheme to Extort Chinook**

16. On March 26, 2014 Defendant John J. Yim sent a letter to Mr. Brauerman in Delaware threatening to file, on behalf of his client, a petition for *inter partes* review ("IPR") seeking to invalidate Chinook's '482 patent unless Chinook immediately granted three (3) retroactive and transferable licenses to the '482 patent. A true and accurate copy of the March 26, 2014 letter from Mr. Yim to Mr. Brauerman is attached hereto as Exhibit A.

17. The March 26, 2014 letter was typed on the letterhead of Defendant John J. Yim & Associates and signed by Defendant John J. Yim. (*Id.*)

18. The March 26, 2014 letter states: "[w]e are attorneys for Iron Dome LLC (www.irondome.com)." (*Id.*)

19. Enclosed with the March 26, 2014 letter was a draft patent license agreement regarding the '482 patent and a draft petition for IPR against the '482 patent. True and accurate copies of the draft patent license agreement and draft IPR petition are attached hereto as Exhibit B and Exhibit C, respectively.

20. An IPR is a trial proceeding conducted before the Patent Trial and Appeal Board whereby a third party may seek a review the patentability of one or more claims in a patent. In effect, an IPR is a vehicle by which a third party can seek to invalidate an issued patent.

21. The draft license agreement enclosed with the March 26, 2014 letter is the mechanism by which Defendant Iron Dome LLC proposed to obtain three (3) transferable licenses to the '482 patent. (*See* Exhibit B.)

22. The enclosed draft patent license agreement indicates that Defendant Steven Yu is the Managing Member of Iron Dome LLC. (*Id*. at 5.)

23. The draft license agreement states that "the Parties wish to resolve their patent dispute and avoid the attendant risks, fees, costs, and expenses that are associated with litigation and other patent related proceedings." (*Id*. at 1.)

24. Prior to Chinook's local counsel's receipt of this letter and enclosures, neither Chinook nor any of its representatives or affiliates had contact with any of the Defendants.

25. Defendants knew of and specifically referenced the litigation that Chinook has pending against other parties.

26. In their letter, Defendants state: "we request a rapid resolution of this dispute." The referenced "dispute" is Defendants' threatened draft petition for IPR enclosed with the March 26, 2014.

27. The draft license agreement does not propose to purchase licensing rights or include any provision wherein Defendant Iron Dome would remit monetary compensation to Chinook in exchange for the requested licenses.

28. Paragraph 3(a) of the draft license states that Defendant Iron Dome LLC may transfer the transferable licenses to the parties in Chinook's pending patent infringement actions. (*Id*. at 2.)

29. Paragraph 5 of the draft license states:

> 5. **Admission of Patent Validity**: Iron Dome admits that the Asserted Patent is valid and enforceable, and as such, will not challenge or participate in any challenge to the validity and enforceability of the Asserted Patent in any kind of legal proceeding.

(*Id*. at 3.)

30. The draft petition for IPR included with the March 26, 2014 letter takes the position that the claims of the '482 patent are obvious and therefore invalid and not enforceable. (*See* Exhibit C at v.)

31. The assertion in Paragraph 5 of the draft license agreement and the basis for Defendants' petition for IPR are diametrically opposed.

32. Chinook refused Defendants' coercive offer to license the '482 patent.

33. On April 22, 2014, a petition seeking IPR of the '482 patent was filed with the United States Patent and Trademark Office by Defendant John J. Yim on Defendant Iron Dome LLC's behalf. Defendant Steven S. Yu is designated as back-up counsel for the petition.

34. On information and belief, in light of the foregoing facts, Defendants' filing of the petition for IPR of the '482 patent was not in good faith and not for a proper purpose.

35. Specifically, for example, Defendant Iron Dome's press release regarding its petition for IPR, included the following quote from Defendant Steven Yu: "No one should have to surrender to these lawsuits exploiting defective patents." A true and correct copy of the press release is attached hereto as Exhibit D.

36. The press release, however, failed to mention that Defendants previously sought to enter into a license agreement for the same '482 patent. Despite Iron Dome's declaration that the "defective" patents were being exploited, Defendants are apparently willing explicitly to assert that the patent was valid and enforceable if only they could obtain rights to license unidentified third parties to the patent in question, presumably for their own financial benefit.

37. On information and belief, it is likely that the remaining defendants in the ongoing Delaware patent infringement actions will find out about the pending petition for IPR,

which will greatly reduce the chances that Chinook will be able to amicably resolve the infringement actions without further litigation.

38. The malicious actions of Defendants in attempting to coerce a license from Chinook and then filing an unfounded legal IPR proceeding will cost Chinook both time and money and interfere with Chinook's ability to license its patent.

39. Defendants sent their injurious communication from their office in Virginia, using letterhead from their counsel with a Virginia address, where the majority of Defendants are located.

40. Defendants knew that they were communicating with a Delaware LLC (Chinook) and contacted Chinook's Delaware counsel in Wilmington, Delaware.

41. Defendants' actions will cause Chinook to incur damages exceeding $75,000.

**Defendants' Pattern and Practice of Extorting Money from Its Targets**

42. Using Iron Dome LLC, Defendants have engaged in a pattern and practice of submitting frivolous petitions for IPR on its targets' valid and enforceable patents.

43. Defendants' attempted to extort eWatch, Inc. using the same or similar scheme described above. On January 17, 2014 Defendant John J. Yim sent a letter to Christopher Goodpastor threatening to file, on behalf of his client, petitions for IPR seeking to invalidate eWatch's patents, U.S. Patent Nos. 7,365,871 and 7,643,168 unless e-Watch immediately granted eight (8) retroactive, royalty-free, non-exclusive and transferable licenses to each patent. A true and accurate copy of the January 17, 2014 letter from Mr. Yim to Mr. Goodpastor is attached hereto as Exhibit E.

44. Enclosed with the January 17, 2014 letter was a draft patent license agreement regarding the '871 and '168 patents and draft petitions for IPR against each patent. True and

accurate copies of the draft patent license agreement and draft IPR petition for the '871 patent are attached hereto as Exhibits F, G, and H, respectively.

45. The draft license agreement does not propose to purchase licensing rights or include any provision wherein Defendant Iron Dome would remit monetary compensation to e-Watch in exchange for the requested licenses, only a statement that the "Parties wish to resolve their patent dispute and avoid the attendant risks, fees, costs, and expenses that are associated with litigation and other patent related proceedings." (Ex. F at 1.)

46. As with the draft license provided to Chinook, Paragraph 5 of the draft license agreement to e-Watch states:

> 5. **Admission of Patent Validity**: Iron Dome admits that the Asserted Patent is valid and enforceable, and as such, will not challenge or participate in any challenge to the validity and enforceability of the Asserted Patents in any kind of legal proceeding.

(Ex. F at 3.)

47. The draft petitions for IPR included with the January 17, 2014 letter for the '871 patent takes the position that the claims of the '871 and '168 patent are obvious and therefore invalid and not enforceable. (*See* Exhibits G and H at v.). Upon information and belief, a reasonable opportunity for further discovery is likely to show that the draft petition for IPR included with the January 17, 2014 letter for the '168 patent takes the position that the claims of the '168 patent are obvious and therefore invalid and not enforceable.

48. As was the case with Chinook, e-Watch refused Defendants' coercive offer to license the '871 and '168 patents, and on February 18, 2014, 2014, Defendant John J. Yim on Defendant Iron Dome LLC's behalf filed the petition for the '871 patent with the United States Patent and Trademark Office seeking i*nter partes* review of the '871 patent. Defendant Steven S. Yu is designated as back-up counsel for the petition.

49. The United States Patent and Trademark Office records show that, despite Defendant Iron Dome's threats, no petition IPR for the '168 patent was filed.

50. For each targeted company, Defendants were aware that the valid patents were asserted in litigation against several defendants.

51. All of Iron Dome's Conduct in filing the petitions for *inter partes* review is directed by and/or done in concert with Defendants or with Defendants' consent and knowledge. All Defendants are aware of (and authorize) the content of the demand letters, petitions, and strategy used by Iron Dome to extort "licenses." Defendant RozMed either controlled the actions of its wholly owned subsidiary Iron Dome or it benefitted from the actions of Iron Dome in attempting to extort licenses from others. Yu and Yim are the individuals directing the activities of each of the entities.

52. All Defendants have cooperated in filing the Petition for the '871 patent for the sole purpose of indirectly interjecting themselves into the related litigation of the '871 and '168 patents in an attempt to extract money from the either the patent infringement defendants in that litigation or from the owner of the '871 and '168 patents. Defendants began their ill-conceived money-making scheme by having Mr. Yim request transferable licenses to the asserted patents on behalf of Iron Dome, presumably to sell them to the parties against whom the '871 patent was asserted. However, Defendants subsequently shifted their scheme to attempt to extract money directly from the owner of the '871 patent. On April 29, 2014, an initial payment from the '871 patent owner of $428,000 and potential subsequent payments of between $875,000 and $971,000 related to the first five putative settlements in the related patent infringement litigation in exchange for its withdrawal of the Petition. A copy of the e-mail communication in which this request for payment is made is provided herewith as Exhibit H.

53. On June 3, 2014, e-Watch filed a patent owner preliminary response with the United States Patent Office in connection with Defendants' petition for IPR of the '871 patent, a copy of which is attached as Exhibit I. In that filing, e-Watch argues that Defendant Iron Dome's abuse of the IPR process warrants a sanction in the form of dismissal of Iron Dome's petition as provided for by 37 C.F.R. Sect. 42.12(b)(8) and an award of attorney fees under 37 C.F.R. Sect. 42.12(b)(6).

54. On information and belief, Chinook alleges that, in each instance, Defendants follow the same format.

## COUNT I
## TORTIOUS INTERFERENCE WITH
## BUSINESS RELATIONS (VIRGINIA COMMON LAW)

55. Chinook repeats, re-alleges and incorporates by reference the allegations of each and every foregoing paragraph of this Complaint as though fully set forth herein.

56. Chinook has existing business relationships with licensees of the '482 patent.

57. Chinook has a reasonable expectation of potential business relationships with alleged patent infringers who have not yet resolved their disputes with Chinook and have not yet obtained a license to the '482 patent.

58. On information and belief, Defendant had knowledge of Chinook's existing business relationships as well as other potential relationships with others regarding Chinook's licensing of the '482 patent. (*E.g.*, Exhibit A.)

59. Defendants knowingly, intentionally, wrongfully, and maliciously interfered with and continue to interfere with Chinook's existing and potential business relationships.

60. The IPR proceeding is unfounded litigation. The only purpose for the litigation is to coerce Chinook into capitulating and tendering a license to Defendant Iron Dome, LLC.

61. Defendants' actions have harmed Chinook's business relationships with current licensees and potential licensees. Chinook's loss of these advantageous business relations resulted directly from Defendants' improper and unlawful actions.

62. Chinook will suffer substantial damages, in an amount to be determined at trial, as a result of Defendants' improper and unlawful actions.

## COUNT II
## RACKETEERING INFLUENCED AND CORRUPT ORGANIZATIONS ACT (RICO)
## 18 U.S.C. § 1961 *et seq.*

63. Chinook repeats, re-alleges, and incorporates by reference the allegations of each and every foregoing paragraph of this Complaint as though fully set forth herein.

64. At all relevant times, Chinook is a person within the meaning of 18 U.S.C. §§ 1961(3) and 1962(c).

65. At all relevant times, Steven S. Yu, and John J. Yim are persons within the meaning of U.S.C. §§ 1961(3) and 1962(c), each of whom, on information and belief, direct the affairs of RozMed LLC and Iron Dome LLC and John J. Yim & Associates LLC, respectively, through a pattern of improper tortious acts and illegal conduct described in this Complaint, which cause financial harm to Chinook and others.

66. RozMed LLC and Iron Dome LLC and John J. Yim & Associates LLC, in any combination in fact, are an "Enterprise," as defined by 18 U.S.C. § 1961(4), controlled and directed by Steven S. Yu and John J. Yim, associated together in fact for the common purpose of making frivolous patent invalidity claims and extorting "licenses" and/or settlement agreements from individuals and entities having valid and enforceable patents. Defendants have a continuing and ongoing relationship wherein, on at least two occasions, they have threatened

frivolous petitions for IPR of patents "licenses" and/or "settlements" to extort unlawful "settlements" and "licenses" to which they are not entitled.

67. Each of the Defendants participated in the operation or management of the Enterprise. Among other things, Yu and Yim direct the affairs of the enterprise. Iron Dome LLC and John J. Yim & Associates are the "front" of the enterprise that, acting on direction of Yu and Yim, file the IPR petitions and carry out the threats and fraudulent conduct further described herein.

68. At all relevant times, the Enterprise was engaged in, and its activities affected interstate commerce within the meaning of 18 U.S.C. § 1962(c).

69. The Defendants conducted or participated, directly or indirectly, in the conduct, management, or operation of the Enterprise's affairs through a "pattern of racketeering activity" within the meaning of 18 U.S.C. § 1961(5) and in violation of 18 U.S.C. § 1962(c).

70. Defendants' pattern of racketeering is demonstrated by, at least, the two petitions for IPR filed against various targets' patents, it knew, or would have reasonably known had it conducted a pre-petition investigation, were not were invalid. In each and every case, Defendants attempted to extort "licenses" from the targets, committed mail fraud, and violated the Travel Act. Defendants used the same or similar techniques in each case, all of which were acts that constitute predicate acts the RICO statute was intended to deter. Defendants' acts shared similar purposes, results, participants, and methods of commission.

71. Defendants acts of past criminal conduct suggests that there is a high risk Defendants will continue to engage in such conduct either against new victims or against those whose patents it has previously filed petitions forIPR . Indeed, Iron Dome admits that its business purpose is to file petitions for IPR against valid patents. Defendants' pattern and

practice demonstrates that it will continue to do so regardless of the validity of the targets' patents. In each and every petition for IPR Iron Dome has filed thus far, it has committed acts of attempted extortion, mail and/or wire fraud, and violations of the Travel Act.

<u>*Extortion in Violation Hobbs Act, 18 U.S.C. § 1951 and*</u>
<u>*Delaware State Penal Law §§ X, X, X,*</u>

72. At all times material to this Complaint, Chinook was engaged in interstate commerce and in an industry that affects interstate commerce.

73. Defendants, individually, or collectively, conducted the affairs of the enterprise through numerous acts of attempted extortion and conspiracy to commit extortion in furtherance of their overall scheme to defraud and enhance their wealth through improper means.

74. As described herein, Defendants have threatened frivolous petitions for *inter partes* review unless Chinook provided transferable, non-exclusive, royalty-free licenses. The Defendant did so with the intent and effect of causing reasonable fear of economic loss on the part of Chinook, to disrupt Chinook's business operations, and to disrupt and encourage Chinook to abandon its defense of the frivolous petitions for IPR initiated by Defendants.

75. Defendants also used the petition for IPR without any interest in the outcome of the review, but with the intent to harm Chinook's business and persuade Chinook to provide "licenses" even though Defendants knew (or reasonably should have known) of the validity of Chinook's '482 patent.

76. Defendants conduct did in fact instill fear in Chinook, causing additional interruptions to Chinook's business, causing the harm Defendants intended, including additional legal fees, disruption of Chinook's business, increased operational costs, decreased productivity, injury to Chinook's reputation, and disruption of Chinook's defense to Iron Dome's petition for *inter partes* review.

*Mail Fraud, 18 U.S.C. 1341 and Wire Fraud, 18 U.S.C. § 1343*

77. As described herein, the Defendants engaged in a scheme to defraud and extort "licenses" from Chinook.

78. In furtherance of their scheme, and as described herein, the Defendants transmitted, or caused to be transmitted, by means of wire communication in interstate or foreign commerce, writings, signs, signals, pictures, and sounds for the purpose of executing such scheme.

79. Specifically, Defendants delivered their threats, false representations regarding the nature of the '482 patent, their "settlement demands," their proposed "license agreement," and their false declaration via wire, email, and/or telephone. Defendants used the U.S. Postal Service and/or private mail carriers to deliver its letter and complaint to Chinook and other victims, both of which were used to deliver threats and intimidate Chinook.

80. The Defendants participated in the scheme to defraud and extort Chinook by knowingly, willfully, and threating Chinook with the specific intent to deceive and/or defraud Chinook into providing Defendants illegal "licenses" and settlements.

81. The Defendants' false and misleading statements were relied on by Chinook and have caused Chinook substantial damages, as described herein.

*Travel Act, 18 U.S.C. § 1952*

82. As described herein, the Defendants engaged in a scheme to defraud and extort substantial sums of money and property from Chinook.

83. Defendants used the mail system, telephone and internet with intent to "promote, manage, establish, carry on, or facilitate the promotion, management, establishment, or carrying on" their racketeering activity, including their unlawful scheme of extorting money from

Chinook and other targets and delivering false threats and misrepresentations to Chinook and others.

84. On information and belief, Defendants have also traveled in interstate commerce with the intent and for the purpose of carrying out racketeering activity, including their unlawful scheme of extorting money from Chinook and other targets.

85. Defendants attempted to commit various acts of extortion, mail fraud, and wire fraud in violation of state and Federal law, as described more in detail herein.

86. Each of the Defendants has engaged in multiple predicate acts, as described herein, not only against Chinook but other victims as well. The conduct of each of the Defendants constitutes a pattern of racketeering activity within the meaning of 18 U.S.C. §1961(5).

87. Chinook was injured in its business and property by reasons of the Defendants' pattern of racketeering activity violating 18 U.S.C. § 1962(c). The injuries to Chinook caused by reason of the violations of 18 U.S.C. § 1962(c) include, but are not limited to, damage to Chinook's reputation and goodwill, disruption to Chinook's business, travel expenses, legal fees and costs in defending itself from Defendants objectively baseless, improperly motivated, sham petition for IPR. Among other things, Chinook's executive has devoted over 100 hours of his time investigating Defendants' frivolous claims of patent invalidity, taking steps to repair Chinook's reputation and goodwill that was damaged as a result of Defendants' conduct, defending and responding to demands Defendants made in connection with its claims, and quieting concerns regarding Defendants' claims. These efforts have diverted significant resources from the operation of Chinook's business, which was Defendants' purpose and intent.

In total, this diversion of resources has cost, and will further cost, Chinook in tens of thousands of dollars.

88. Further, these injuries to Chinook were a direct, proximate, and reasonably foreseeable result of the violation of 18 U.S.C. § 1962. Indeed, these are the very type of damages Defendants threatened to inflict upon Chinook if Chinook did not comply with Defendant's extortion demands. Chinook has been and will continue to be injured in its business and property in an amount to be proven at trial.

89. Pursuant to 18 U.S.C. § 1964(c), Chinook is entitled to recover treble damages plus costs and attorneys' fees from the RICO Defendants.

90. Chinook seeks a permanent injunction to enjoin Defendants from pursuing any more frivolous *inter partes* reviews.

## COUNT III
## CONSPIRACY TO VIOLATE RICO (18 U.S.C. 1962(d)

91. Chinook repeats, re-alleges, and incorporates by reference each and every foregoing paragraph as though fully set forth herein.

92. Defendants Yu, Yim, RozMed, and John J. Yim & Associates, individually and collectively conspired with Iron Dome to commit wire fraud, extortion, and violate the RICO statute as described herein.

93. Chinook was injured in its business and property by reason of the Defendants' pattern of racketeering activity violating 18 U.S.C. § 1962(c). The injuries to Chinook caused by reason of the violations of 18 U.S.C. § 1962(c) include, but are not limited to, damage to Chinook's reputation and goodwill, disruption to Chinook's business, travel expenses, legal fees and costs in defending itself from Defendants' objectively baseless, improperly motivated, sham petitions for IPR. Among other things, Chinook's executive has devoted over 100 hours of his

time investigating Defendants' frivolous claims of patent invalidity, taking steps to repair Chinook's reputation and goodwill that was damaged as a result of Defendants' conduct, defending and responding to demands Defendants made in connection with its claims, and quieting concerns regarding Defendants' claims. These efforts have diverted significant resources from the operation of Chinook's business, which was Defendants' purpose and intent. In total, this diversion of resources has cost, and will further cost, Chinook in tens of thousands of dollars.

94. Further, these injuries to Chinook were a direct, proximate, and reasonably foreseeable result of the violation of 18 U.S.C. § 1962. Indeed, these are the very type of damages Defendants threatened to inflict upon Chinook if it did not comply with its extortion demands. Chinook has been and will continue to be injured in its business and property in an amount to be proven at trial.

95. Pursuant to 18 U.S.C. § 1964(c), Chinook is entitled to recover treble damages plus costs and attorneys' fees from the RICO Defendants.

## PRAYER FOR RELIEF

WHEREFORE, Chinook respectfully prays for the following relief against Defendants, as follows:

    A.    Judgment in favor of Chinook on all claims;

    B.    Awarding Chinook monetary damages;

    C.    Awarding Chinook treble damages according to statute, 18 U.S.C. §1964(c);

    D.    Awarding Chinook prejudgment interest according to statute;

    E.    Awarding Chinook reasonable attorneys' fees and costs according to statute, 18 U.S.C. § 1964(c);

    F.    Ordering Defendants to withdraw it petition for *Inter Partes* Review of the '482 patent;

    G.    Enjoining Defendants from taking any further action or threatening to take further action against the validity of the '482 patent;

    H.    Enjoining Defendants from soliciting, entering into, or enforcing any agreements with potential licensees with regard to the '482 patent or otherwise impair Chinook's ability to license the '482 patent; and

    I.    Granting such other and further relief as this Court deems just and proper.

## DEMAND FOR JURY TRIAL

Chinook demands a trial by jury of any and all causes of action.

Dated: June 13, 2014                          Bayard, P.A.

                                                /s/ Stephen B. Brauerman

- 19 -

Richard D. Kirk (rk0922)
Stephen B. Brauerman (sb4952)
Vanessa R. Tiradentes (vt5398)
Sara E. Bussiere (sb5725)
222 Delaware Avenue, Suite 900
Wilmington, DE 19801
(302) 655-5000
rkirk@bayardlaw.com
sbrauerman@bayardlaw.com
vtiradentes@bayardlaw.com
sbussiere@bayardlaw.com

Attorneys for Plaintiff Chinook Licensing DE, LLC