<pre>
 1                    IN THE UNITED STATES DISTRICT COURT

 2                    IN AND FOR THE DISTRICT OF DELAWARE

 3                              - - -

 4   CHINOOK LICENSING DE, LLC,
                                  :    CIVIL ACTION
 5            Plaintiff,          :
     v                           :
 6                               :
     ROZMED LLC, IRON DOME LLC,   :
 7   JOHN J. YIM & ASSOCIATES LLC, :
     STEVEN S. YU, and JOHN J. YIM, :
 8                               :    NO. 14-598-LPS
              Defendants.
 9                              - - -

10                       Wilmington, Delaware
                         Thursday, December 18, 2014
11                       Oral Argument Hearing

12                              - - -

13   BEFORE:        HONORABLE LEONARD P. STARK, Chief Judge

14   APPEARANCES:                - - -

15
                 BAYARD, P.A.
16               BY:  STEPHEN B. BRAUERMAN, ESQ., and
                      SARA BUSSIERE, ESQ.
17
                          Counsel for Plaintiffs
18

19               FINGER & SLANINA LLC
                 BY:  DAVID L. FINGER, ESQ.
20
                          and
21
                 JOHN J. YIM & ASSOCIATES, LLC
22               BY:  JOHN J. YIM, ES.
                      (Tysons Corner, Virginia)
23
                          Counsel for Defendants
24

25                             Brian Gaffigan
                               Registered Merit Reporter
</pre>

1                          - oOo -

2                      P R O C E E D I N G S

3              (REPORTER'S NOTE:  The following oral argument

4     hearing was held in open court, beginning at 9:03 a.m.)

5              THE COURT:  Good morning everyone.

6              (The attorneys respond, "Good morning, Your

7     Honor.")

8              THE COURT:  I'll have you put your appearances

9     on the record, please.

10             MR. BRAUERMAN:  Good morning, Your Honor.  Steve

11    Brauerman from Bayard on behalf of the plaintiff, Chinook

12    Licensing Delaware, LLC.  I'm joined at counsel table by my

13    colleague, Sara Bussiere.

14             MS. BUSSIERE:  Good morning.

15             THE COURT:  Good morning.

16             MR. FINGER:  Good morning, Your Honor.  David

17    Finger of Finger & Slanina on behalf of defendants.  With me

18    as counsel is John J. Yim of John J. Yim & Associates who is

19    one of the defendants in this case.

20             THE COURT:  Welcome.  So let me just say I know

21    we're here for argument primarily on the motion to dismiss

22    by the defendants.  I know there is a motion for leave to

23    amend the second amended complaint pending.  Having reviewed

24    the papers, my sense is, and I think the parties agree with

25    this, that the proposed second amended complaint doesn't

1    really impact or change the analysis on the motion to

2    dismiss.  So while I want you to feel free to touch on the

3    motion for leave to amend, in your presentation I'm going to

4    hear from defendants first, and I'm really primarily focused

5    on the motion to dismiss.

6              So with that, Mr. Finger, if it's you, you may

7    go ahead.

8              MR. FINGER:  Thank you, Your Honor.  Yes, I

9    spoke with counsel for plaintiff, and our thoughts were

10   along the line of what Your Honor had indicated as to how

11   we'll proceed.

12             May it please the Court, this is the time for

13   hearing the defendant's motion to dismiss.  Before getting

14   to such matters as federal preemption and *Noerr-Pennington*,

15   I just want to touch on points why the complaint doesn't

16   state a claim.

17             The complaint is based on two flawed propositions.

18   The first proposition is that the settlement letter, which is

19   a factual predicate for the plaintiff's claim, plaintiff

20   claims it was not in fact a settlement proposal.  As such,

21   it should not be accorded that dignity.  This proposition is

22   based on an unwieldy, formalistic, and restrictive definition

23   of what is a settlement proposal.

24             Plaintiff suggests that there must be an

25   existing claim in litigation before my document can be

1    deemed a settlement proposal.  However, this view has been

2    rejected by the Third Circuit, which we provided this case

3    at pages 5 and 6 of our reply brief, which states that the

4    litigation doesn't have to be threatened, much less filed,

5    for a document to be a settlement proposal.  Rather, all

6    that is required is a dispute or a difference of opinion.

7           Now, plaintiff suggests that there really was

8    no genuine difference of opinion because in the settlement

9    proposal, Iron Dome agreed to compromise its claim and say

10   that Chinook owned the intellectual property.  And they say,

11   "aha," that proves there is no real claim at issue.

12          Of course, this is silly because all settlement

13   offers involve compromises of claims and an agreement not to

14   pursue them in a legal forum.  That is at the very essence

15   of the settlement proposal.

16          THE COURT:  On that point, do you find any

17   significance in the changed language of the proposed license

18   that your client was seeking?

19          MR. FINGER:  None whatsoever.

20          THE COURT:  It is true, though, having to take it

21   as true at this point, that initially your client offered, I

22   have the specific language here somewhere, but essentially to

23   say, hey, this patent is valid and then later proposed it to

24   say I won't challenge the validity of your patent, something

25   like that.

1              MR. FINGER:  I can't explain beyond the face of

2      it, Your Honor, but I don't think it's valid.  The point is

3      they say the same thing.  They basically say we're giving up

4      our rights to challenge it.  That is what you expected.  And

5      I don't think the other side to a settlement proposal would

6      accept the settlement proposal that didn't have language, no

7      matter how it was framed.

8              In this case, the letter itself was a lawful

9      attempt to resolve a difference.  A lawful attempt.  And

10     this is sort of a key dispute we're having.  We have, there

11     are numerous cases we provided to Your Honor which uniformly

12     hold that a threat of litigation is not a basis for a cause

13     of action.  It is an exercise of constitutionally protected

14     rights.  It is considered to be the civilized way, means of

15     resolving disputes.  So a threat, there are threats and then

16     there are threats.  The threat to use lawful means does not

17     turn something into an unlawful act.

18             THE COURT:  So you say it was a lawful attempt

19     to resolve a difference, but what interest did your clients

20     have in the validity of this patent?

21             MR. FINGER:  They have an interest they wanted

22     to use the patent.  They had the interest that the American

23     Invents Act gave them, gave the rights of third parties to

24     challenge patents in IPR proceedings.  They have that

25     standing by virtue of there not being a direct contractual

1    interest already existing in the patent.

2              THE COURT:  Is there any limitation at all on

3    what third parties can challenge regarding the validity of a

4    patent in an IPR?

5              MR. FINGER:  I don't believe there is.  I can

6    check to see.  I'm not a practitioner, particularly not

7    before the Patent and Trademark Office.  I believe, I do

8    not mean to cast aspersions, but as your Honor knows from

9    the materials we quoted in our brief, the purpose of the

10   change from an interference process to an IPR process was

11   to give people a tool to fight patent trolls, to fight

12   nonoperating entities, and that is a public policy decision

13   to get rid of these questionable patents.

14             THE COURT:  In this case, again, based on the

15   limited materials I'm about to consider at this point, is

16   there any evidence of any relationship between your client

17   and any of the nine defendants that were sued in the cases

18   that are pending here in front of me or were pending at one

19   point?

20             MR. FINGER:  I know of none.  There is nothing

21   in the record which identifies it as that, Your Honor.  So

22   as I say, this first proposition it is not a settlement

23   agreement is proven false if for no other reason than by

24   the Third Circuit's definition of a settlement agreement as

25   not being restricted as the plaintiff would like.

1          The second proposition that the plaintiff

2     proposes is that the threat of legal or administrative

3     action constitutes extortion.

4          Of course, we cited numerous authorities,

5     including Your Honor's decision in *Rader v Sharebuilder*,

6     which is affirmed by the Third Circuit for the proposition

7     that a threat of legal action alone, justified or not, does

8     not constitute extortion as a matter of law, whether for

9     the purposes of RICO, the Hobbs Act, or otherwise.

10          Plaintiff has not identified any cases to the

11     contrary.  The cases he cites or it cites involve actions

12     that go beyond mere threats of legal action.  They involve,

13     for example, threats of violence.

14          The one case they seem to rely heavily is the

15     *Raw Films* case in Virginia, but in that case, the evidence

16     of wrongful conduct was not the sending of settlement

17     letters.  Rather, it was the fact what would happen, the

18     plaintiff would file lawsuits, make a settlement demand.

19     If he wins and gets a settlement, he dismisses it.  If the

20     plaintiff did not settle it and file a motion, then the

21     plaintiff would withdraw the complaint, dismiss the com-

22     plaint before there was a judicial ruling that prevented

23     it from using that same lawsuit in other cases, the same

24     cause of action.

25          The court found that this practice of filing a

1    lawsuit and then withdrawing it upon motion raises the

2    specter this lawsuit was for an improper purpose and

3    warranted a Rule 11 investigation.

4            By contrast, the record in this case, Iron Dome

5    has prosecuted diligently at least two cases, one of which

6    they have not been successful, the other which they were

7    more successful, the *e-Watch* case.  So there is no evidence

8    in this case that the threat of litigation was merely a

9    shakedown.

10           I want to make one correction to something

11   that my friend said in their brief.  They stated that in

12   Virginia, there is a civil cause of action for extortion.

13   And the *Smithfield* case they cite at page nine of their

14   brief does use the phrase "civil extortion."  It's a federal

15   case, not a state case.  But the state cases that that court

16   cites are criminal cases and they cite the criminal statute.

17           And I have, I will hand up to Your Honor a

18   case from the Circuit Court of Virginia (1992) in which the

19   court there indicates that there is no civil recovery for

20   extortion in Virginia.

21           THE COURT:  You can certainly pass it up.  Why

22   don't you put on the record what the case name and citation

23   is.

24           MR. FINGER:  Certainly.  It is *Johnson v Friedman*.

25   It's an unreported decision, 1992 WL 884626, dated April 8th,

1    1992.

2                    THE COURT:  Okay.

3                    MR. FINGER:  One of the things, responding to

4    the plaintiff's brief, they argue that the Court must accept

5    its allegations that the settlement letter constitutes

6    extortion, but that argument is misplaced.

7                    The Court, of course, must accept the factual

8    assertion that Iron Dome sent the letter, but the legal

9    conclusion, whether or not it constitutes extortion,

10   requires no deference from Your Honor.  That is the issue

11   that Your Honor has to decide as a matter of law.

12                   THE COURT:  What about allegations that the IPR

13   is baseless and unfounded?

14                   MR. FINGER:  I was going to get to that, but I

15   would be happy to address that now.

16                   Again, this court, not Your Honor, in 1980 I

17   think it was, this court in the *City of Newark* case, I

18   believe it was, stated that it takes more than a conclusory

19   statement, a sham to get around the *Noerr-Pennington*

20   doctrine.  The cases are consistent.  Sham is a conclusion.

21   We need some facts to show why it is a sham.  We need some

22   facts to show why it is subjectively baseless.

23                   There is a good reason for that.  If one can

24   get around *Noerr-Pennington* by using "sham" or "objectively

25   baseless" without any supporting facts, any claimant would

1    be able to get around the intent of the Supreme Court in

2    the *Noerr-Pennington* cases.  They would all use these magic

3    words.  And if that were the case, then people who want to

4    participate in government actions, knowing that they would

5    have to be put to the expense and burden of litigation and

6    discovery through at least a summary judgment phase, would

7    be chilled from exercising their First Amendment rights.

8            Indeed, the Ninth Circuit in the case we cited

9    in our briefs pointed out that because of this, a heightened

10   pleading standard is required.  So we have numerous cases

11   that state, make it clear that a conclusory statement that

12   something is a sham or is baseless is inadequate for

13   *Noerr-Pennington*.  I would suggest otherwise as it is simply

14   conclusory, and on a motion to dismiss, the Court is not

15   obligated to give any deference to conclusory statements.

16           So, again, if one says "sham," one says

17   "extortion," and that is all it takes to file a motion to

18   dismiss, there would be a lot more litigation.

19           THE COURT:  If one says "baseless" or

20   "unfounded," your argument is the same, is it?

21           MR. FINGER:  That is exactly right, Your Honor.

22           THE COURT:  But you do go to great lengths in your

23   briefing to fault their pleading for not alleging essentially

24   that no reasonable person could think they could prevail on

25   your IPR.  Why is that important or would that really make a

1    difference given your arguments that "baseless" and other

2    magic words don't help them?

3              MR. FINGER:  Yes, Your Honor.  The point I'm

4    trying to make, if they could put down an argument or a

5    pleading saying it is baseless because this prior art is

6    XY&Z.  It is baseless because ... just make a little patent

7    showing so the Court could say there is a reason for this

8    court to doubt that any reasonable person could have

9    considered this lawsuit meritorious.

10             In that regard, I do want to quote from a

11   decision.  It is a decision of the U.S. Supreme Court in

12   *Pennsylvania Real Estate Investors Inc. v Columbia Pictures*

13   which we cite in our brief.  It's 508 U.S. 49, at page 16,

14   No. 5 (1993).  The Supreme Court said,

15             "A winning lawsuit is, by definition, a

16   reasonable effort at petitioning for redress and therefore

17   not a sham.  On the other hand, when the antitrust defendant

18   has lost the underlying litigation, the court must resist

19   the understandable temptation to engage in posthoc reasoning

20   by concluding that an ultimately successful action must have

21   been unreasonable or without foundation.  The court must

22   remember that even when the law or facts appear questionable

23   or unfavorable at the outset, a party may have an entirely

24   reasonable ground for bringing suit."

25             Now, if they had pleaded facts which support

1    their arguments to baselessness, we would then be able to,

2    in our brief, respond and Your Honor would have had the

3    issue squarely joined and could make an informed decision

4    as to whether it was a sham or objectively baseless.  Your

5    Honor was denied that wonderful exercise because there are

6    no facts, supporting facts pleaded.

7            The point I was trying to get at, at the outset,

8    is the failure of these two propositions about whether or not

9    that is extortion, that it is a settlement letter, caused

10   their complaint to failure respecive of *Noerr-Pennington* and

11   the federal exemption because for the RICO and conspiracy,

12   for the RICO claims, there has to be a predicate act.  Absent

13   extortion, there is no predicate act; and although they claim,

14   again, in a conclusory form, they claim fraud, they don't

15   identify any fraudulent statements, so down goes RICO and a

16   conspiracy to commit, and the same for tortious interference.

17   Absent extortion, there is no tortious or wrongful act.

18           Additionally, I note that the communications

19   were not directed to the third parties, nor is there any

20   allegation that there were any prospective settlements being

21   negotiated that were disrupted by the letter and which were

22   not sent to those defendants to give them to the plaintiff.

23           Indeed, Your Honor could take judicial notice

24   of the fact that since the lawsuit was filed, Chinook has

25   settled with four of the five outstanding defendants in the

1    cases they brought, having previously settled with another

2    five.  So there is some real question, it may not be

3    relevant at this stage and hopefully this is the last stage,

4    but whether they will be able to prove damages, but they

5    certainly haven't pleaded any.

6              On that, Your Honor I would like to turn now to

7    *Noerr-Pennington*.

8              As Your Honor is well aware, *Noerr-Pennington*

9    derives from the First Amendment clause granting citizens

10   the right to petition government for redress of grievances,

11   and it applies to the context of the USPTO proceedings as

12   well as litigation.  The Supreme Court has set forth a

13   two-part test to determine the existence of sham litigation:

14             The first, suits must be objectively baseless

15   in the sense that no reasonable litigant could reasonably

16   expect success on the merits.  Again, that is the *Professional*

17   *Real Estate Investors* case we cite in our brief.  And as the

18   language indicates, that is a pretty high standard.

19             I have already gone over with Your Honor the issue

20   of pleading sham, which we say was not done here.  And, of

21   course, I could expect plaintiff's counsel to come up here and

22   argue ably they should be entitled to get discovery because

23   discovery will help them fill the gaps in a sham.

24             However, the Court cannot ignore the important

25   constitutional countervailing principle.  To allow a complaint

1   to stand based on their mere expectations of otherwise

2   privileged conduct would seriously endanger the protection

3   of constitutional rights.

4          I have already gone over with Your Honor the

5   fact that they would come up here and they would say, ah,

6   it's clear it's a sham because they lost before at the PTO,

7   but merely losing a lawsuit is not a sham any more than

8   merely losing a lawsuit means bad faith under Rule 11.

9   So they need more than just the fact that Iron Dome was

10  unsuccessful before the PTO.

11         If, and only if, that threshold of pleading a

12  sham is met, then the Court has to inquire whether the

13  suit evidences a subjective intent to use the process to

14  interfere with a competitor's business.  But it's important

15  not to conflate the two elements.  Initiating a legal

16  proceeding one hopes to win is within the ambit of

17  *Noerr-Pennington* even if the result harms a competitor's

18  business.

19         And unless Your Honor has any questions on

20  *Noerr-Pennington*, I'd like to turn to the federal preemption.

21         THE COURT:  That's fine.

22         MR. FINGER:  We claim that any claim based on

23  the prosecution of the IPR is preempted by federal law.

24  "The statute that creates the IPR proceeding already

25  prohibits any improper use" -- and I will put that in

1    quotes.  That's from the language of the statute -- "of an

2    IPR proceeding and grants to the USPTO the authority to

3    impose sanctions for misusing that proceeding."  That's at

4    35 U.S.C., Section 316(a).

5            The federal regulations implementing that

6    statute authorize sanctions for "advancing a misleading

7    or frivolous argument or request for relief and," also in

8    quotes, "any improper use of the proceeding."

9            The regulation also provides for award of

10   compensatory damages, including attorney fees.

11           Now, I respectfully suggest that this broad

12   language, "any improper use" and "compensatory damages" that

13   result in that improper use completely occupies the field of

14   remedies for misuse of the IPR process.

15           Now, plaintiff relied on a case, the *Cryovac*

16   case from this court, to argue that there is no preemption.

17   In the *Cryovac* case, however, the state law claim of

18   tortious interference was being brought by the patent holder

19   concurrently, or, as in this case, there is the patent holder

20   is using it and we're saying he is not bringing the IPR.

21   Interestingly enough, the plaintiff did bring an IPR sanction

22   request.  We attached the holding in the PTO that there is

23   no basis for sanctions.  That is Exhibit B to our motion to

24   amend.  So in this, they're basically seeking a second bite at

25   the apple.

1   In this case, however, it is not factually -- it's factually

2   distinct from *Cryovac* because the patent holder is not trying

3   to use the state and federal rights simultaneously.  In this

4   case, they're at odds.  We're saying that he has to use one,

5   this or the other.

6           It's also not an apt authority because the issue

7   in this case is whether the federal statute and regulations,

8   as they say, occupy the entire field to determine preemption.

9   And as I said before, the language seems to suggest.

10          The *Lockwood* case that we cited at page 13 of

11  our brief is remarkably similar.  There, the California

12  federal court found that a state law claim was preempted

13  because any claim of improper conduct arising from a

14  reexamination request was at worse "no more than bad faith

15  misconduct before the USPTO."

16          So if they feel that we used the inter partes

17  review for an improper purpose, the statute and regulation

18  provided a remedy for.  And so it was actually challenging

19  the action we brought in the USPTO for an improper purpose.

20          I do want to say a word, Your Honor, moving on

21  now to, the claims were brought, in addition to Iron Dome,

22  against Mr. Yim and his associates.  They went to great

23  lengths to sue Iron Dome's lawyer and his law firm.

24          This is very troubling and should give the legal

25  system pause.  To hold that a lawyer is subject to being

1  sued in these circumstances would create quite a chilling

2  environment.

3          Our system already had procedures in place,

4  Rule 11 for improper filings and disciplinary sanctions for

5  wrongdoing.  In fact, I will bring to the Court's attention

6  that Chinook filed ethics complaints against Yim in four

7  jurisdictions where he submitted the basis upon his sending

8  a settlement letter.  This is just simply extreme conduct.

9          I would also bring to the Court's attention that

10 the Third Circuit's recognized that where an attorney acts

11 within the scope of the attorney-client relationship, there

12 is no conspiracy between the lawyer and the client.  That is

13 in a case called *John Heffernan v. Robert W. Hunter*, 189

14 F.3d 405, at 407.  It's a Third Circuit case in 1999.  This

15 also relates back to the invalidity of the RICO claims.

16          There simply is no factual allegation or legal

17 authority supporting any claim against Mr. Yim or his firm

18 and, in any event, they should be dismissed.

19          The last thing on the agenda.  I'm sorry, Your

20 Honor.  Did you have a question?

21          THE COURT:  I wasn't sure, but I am going to.

22 There is an allegation that at least Mr. Yu is the managing

23 member of Iron Dome.  Mr. Yu is one of the defendants;

24 correct?

25          MR. FINGER:  That's correct, Your Honor.

1              THE COURT:  Is it your interpretation here that

2      he is sued not in his capacity of managing manager of Iron

3      Dome but in his capacity as an attorney?

4              MR. FINGER:  No, Your Honor.  He is being sued

5      in his capacity of managing director.

6              THE COURT:  It's Mr. Yim being sued as an

7      attorney?

8              MR. FINGER:  Yes.

9              THE COURT:  I see.  Thank you.

10             MR. FINGER:  I want to touch for a moment on the

11     motion to amend.  As Your Honor pointed out, I think every

12     one agrees that it's the tail, and it doesn't change things.

13     What it shows is that in their amendment, they are not able

14     to cure the deficiencies of pleading necessary to overcome

15     these issues of preemption and *Noerr-Pennington*.  Therefore,

16     we would request, Your Honor, that this action be dismissed

17     with prejudice.

18             THE COURT:  Just touch briefing on plaintiff's

19     standing.  I think you are arguing that they lack standing;

20     is that correct?

21             MR. FINGER:  They lack standing?

22             THE COURT:  I may be mistaken, but I thought

23     you had an argument that they lacked standing even to bring

24     this suit.

25             MR. BRAUERMAN:  I think there was a reference to

```
 1   their lack of standing to bring an extortion claim because

 2   it's not a civil claim.

 3             THE COURT:  But it's not a broader argument that

 4   the whole case should be dismissed on the lack of standing?

 5             MR. FINGER:  No.

 6             THE COURT:  All right.  We'll save the rest of

 7   your time for rebuttal.

 8             MR. FINGER:  Thank you, Your Honor.

 9             THE COURT:  Thank you very much.

10             Mr. Brauerman.

11             MR. BRAUERMAN:  Thank you, Your Honor.  Steve

12   Brauerman on behalf of plaintiff Chinook Licensing Delaware

13   LLC.

14             I, too, Your Honor, do understand they made a

15   broader standing argument under Rule 12(b)(1).  In light

16   of Mr. Finger's representation that they do not, I do not

17   intend to respond to that, but if Your Honor wants to hear

18   from me on that, I'm happy to.

19             I'd like to address first the argument that the

20   letter is or is not a settlement proposal.  That is, at this

21   stage, largely irrelevant regardless of how that outcome

22   comes.  They rely on Rule 408 which is a rule of evidence

23   which excludes the admissibility of certain evidence at

24   trial.  At the pleading stage, though, that has no bearing

25   on whether we have stated a claim and no bearing on whether
```

1    the facts we allege state a claim.

2              Nevertheless, I think the weight of authority

3    is against them.  First of all, we allege that was no

4    relationship between Chinook and Iron Dome that predated

5    the settlement letter or the demand letter, I'll call it.

6              The demand letter is not a letter designed to

7    resolve a dispute.  The demand letter is the letter that

8    created or sought to create a dispute.  That is not

9    protected under Rule 408.

10             It's important to note that while the IPR is

11   litigation like, it is not litigation.  They did not cite

12   a single case that applied Rule 408 protections to

13   prelitigation conduct of an administrative proceeding, or

14   prefiling conduct of an administrative proceeding.  So they

15   cannot hide behind Rule 408 to avoid it.

16             At this stage, the Court needs to accept our

17   allegations as true.  The issue here and the allegations

18   of the settlement letter, and it gets into all their other

19   arguments, are that they took the position through that

20   correspondence that the patent was both valid and invalid at

21   the same time.  One of those statements is false.

22             I've been involved in a lot of settlements.

23   In none of those settlements does a party admit that they

24   infringed or that a claim was valid or invalid.  Rather,

25   they give up their rights to pursue that, which is exactly

1   what Iron Dome has changed the language of its agreement to do.

2             That is telling here.  That is an admission that

3   what they did was improper, that what they did was fraudulent,

4   and that what they did was extortion.  At this point, those

5   facts alone are sufficient to survive a motion to dismiss.

6             Your Honor addressed *Noerr-Pennington*, and I

7   apologize we didn't cite this decision in our papers.  It

8   came out somewhat around the same time we were briefing.

9   It's *S3 Graphics Company v ATI Technologies*, 2014 WL 573358.

10  It was a decision by Your Honor where you addressed both

11  *Noerr-Pennington* and preemption in that case.

12            I'll get to those two issues in a little bit in my

13  argument, but the point I want to make now is that Your Honor,

14  in addressing these claims, said that it was premature at the

15  12(b)(6) stage to decide those when you had to accept the

16  factual allegations as true.  That is where we are here.

17            Regardless of whether it's a settlement proposal

18  or it's characterized as a settlement proposal, Rule 408

19  does not protect them.  We don't think it falls as a matter

20  of law as a settlement proposal, but even if it did, Rule

21  408 doesn't help them on a motion to dismiss.

22            THE COURT:  I'm not sure if Mr. Finger even

23  mentioned Rule 408 this morning.  I know it's in the briefing.

24  But let's just say for argument's sake you are right about

25  408 doesn't defeat their motion.  That's not the end of the

1    analysis, is it?

2           MR. BRAUERMAN:  Well, I think that it is.  But

3    they made an additional argument, which I also think fails,

4    which is simply alleging a threat to bring a lawsuit is not

5    actionable.  That is not, as a factual matter, what they

6    did or what we alleged that they did.

7           What we alleged they did is they took a position

8    they knew was baseless, and we said that, and we disagree

9    that we need to go through the merits of the claim or the

10   merits of the IPR to provide the Court with facts from which

11   the Court can infer that it was baseless.

12          We said they took two conflicting positions in

13   the correspondence.  Those positions cannot be reconciled.

14   They were done for the sole purpose of interfering with our

15   relationship, trying to steal essentially Chinook's patent

16   so that they could license the or sell it to third parties.

17          Your Honor asked whether they can or Mr. Finger

18   maybe made the point they didn't actually communicate with

19   the third parties involved in the suit.  That is not true.

20   They issued a press release the day they filed the IPR.

21   That press release went out to the world.  That included the

22   defendants.  There may be facts in discovery that showed

23   direct correspondence from, between Iron Dome or Mr. Yim

24   or Mr. Yu or RozMed and the other defendants, and we're not

25   required at this stage to do that.

1          We did allege injury.  We did allege damage.

2     That settlements were reached does not indicate that Chinook

3     suffered no damages.  Chinook hasn't filed any additional

4     lawsuits against other infringers of its technology.  That

5     is damage that has been caused and alleged in the complaint.

6          So the allegations of damage, and I don't

7     actually understand them to be saying we haven't stated

8     damage or at least to avoid that on the standing issue, but

9     I did want to raise that.

10         On their second point, that the threat of legal

11    or administrative action does not, by itself, constitute

12    extortion.  One is I think contrary to the law.  Two is it

13    doesn't address the other bases under which we based the

14    RICO claim, which includes mail fraud, wire fraud, and the

15    Travel Act.  That may address the Hobbs Act and extortion,

16    but they don't touch any of the mail fraud or wire fraud.

17         The fraudulent statement alleged is that the IPR

18    or the patents, rather, are invalid while they simultaneously

19    believe the patents are valid.  They can't hold those two

20    positions simultaneously.  To make that statement is

21    fraudulent; and that is the statement on which we allege,

22    and on which we blame, we base, excuse me, the RICO claims.

23         There is no question that Chinook identified the

24    fraudulent acts with specificity.  The who, what, when,

25    where, and how of the correspondence of the fraudulent

1    statement of the reliance are all alleged in the complaint.

2            THE COURT:  But it all goes back to the

3    settlement or demand letter and the threat to initiate the

4    IPR; right?  All the claims go back to that eventually;

5    correct?

6            MR. BRAUERMAN:  That's correct.

7            THE COURT:  So come back to the language that

8    you are relying on which as I understand it was in the first

9    proposed license whereby Chinook agreed to say the patent is

10   valid essentially; correct?

11           MR. BRAUERMAN:  Iron Dome.

12           THE COURT:  I'm sorry.

13           MR. BRAUERMAN:  So what they did is they sent

14   us correspondence.  They said give us, I think it was three,

15   three royalty-free transferable licenses so that we can --

16   and to be clear, this is not, Iron Dome is not a practicing

17   entity trying to be free of our patent.  They want licenses

18   that they can transfer to third parties and undercut our

19   licensing efforts.  So in that context, they said give us

20   three royalty-free licenses for no consideration or we're

21   going to invalidate your patent -- or we're going to seek to

22   invalidate your patent.

23           We're not saying there is a basis to do that.

24   Yes, we put together a 100 page petition.  That petition, it

25   was baseless.  We allege that it was baseless.  The PTO

1     agreed with us that it was baseless; and we'll get to the

2     effects of that in the presumption there.  But the length

3     of a document or the fact that it put together claim charts

4     does not mean that it is not baseless.  It does not mean

5     that they didn't know at the time that it was baseless.  And

6     the way we know they know at the time is because they were

7     willing to agree in a contract, if we gave them what they

8     wanted that, the patent claims were valid.

9          THE COURT:  I think this is part of their

10    argument, this happens all the time in settlement discussions.

11    You have to be willing to stake out a particular position and

12    then ultimately willing to compromise that position.  How is

13    this any different than that?

14         MR. BRAUERMAN:  Well, I don't agree that this

15    happens in settlement communications all the time.  And as I

16    said earlier, I have yet to have an accused infringer or

17    when I represent the accused infringer admit that they

18    infringed a patent or that it was valid.

19         Rather, in nearly every settlement -- and

20    again it's somewhat beyond the record so I don't think it's

21    appropriate to consider that at all at this stage, but even

22    if Your Honor were to, I don't think that is a correct

23    statement of fact as it happened.

24         They could have given up their right to file the

25    IPR.  That may have made our claim more difficult.  I don't

1    know that it would have foreclosed it altogether.

2              THE COURT:  Well, I want to focus on that.

3    Because, and you are right to bring us back to the record,

4    paragraph 29, I'm looking at your proposed second amended

5    complaint.  But this paragraph appears maybe at a different

6    number in the earlier, first amended complaint.

7              Your paragraph 29 quotes their paragraph 5 of

8    the initial draft license, which says, it was entitled

9    Admission of Patent Validity.  "Iron Dome admits that the

10   asserted patent is valid and enforceable and as such will

11   not challenge or participate in any challenge to the

12   validity and enforceability of the asserted patent in any

13   kind of legal proceeding."

14             That is the language you are relying on; right?

15             MR. BRAUERMAN:  That's correct.  I'm sorry.

16             THE COURT:  Essentially what you are telling me

17   is it is not in the record but unusual in your experience,

18   maybe unprecedented in your experience.

19             MR. BRAUERMAN:  That is correct.  But I want to

20   clear.  It's not just that statement, it's the entirety of

21   the actions that they did.  It's the content of their

22   letter.  It's the way they have proposed that we think they

23   are abusing, if not the letter, the spirit of the IPR rules.

24   The creation of this, and Mr. Finger is incorrect and I

25   think the legislative history will bear me out, was not to

1    stop patent trolls.  What it was to do was to address bad

2    patents and to provide opportunities to, in a supposedly

3    less expensive and faster process to District Court

4    litigation, to address invalidly issued patents.  That is

5    the purpose of the IPR statute.  I believe the legislative

6    history of the AIA bears me out on that.

7            THE COURT:  But what about the statute?  Is

8    there any limitation on who can initiate an IPR?

9            MR. BRAUERMAN:  No, not in the letter of it.

10   But I think, and there have been discussions in the press

11   and among the community, we're going to see some sort of

12   patent reform.  The purpose of this was not to create a side

13   business for a party that has no interest in the patent, no

14   rights, doesn't practice, doesn't want to do anything other

15   than undercut.

16           THE COURT:  Well, that all may be so, and you

17   might be right on what the policy should be and how the law

18   maybe should change, but the law as it is now, as you have

19   acknowledged, doesn't place those limitations on who can

20   initiate an IPR.  So at base, isn't it true, as a matter

21   of law, that what the defendant here has done is protected

22   legal activity?

23           MR. BRAUERMAN:  No, because they filed a baseless

24   IPR.

25           THE COURT:  Well, let's assume for the moment it

1   was baseless.  What, in the IPR statute, gives rise to the

2   possibility that it could be extortion or some other tort to

3   file a baseless IPR petition?

4              MR. BRAUERMAN:  Well, certainly, Your Honor,

5   they have -- and we're not, we didn't question this.  They

6   have the right to file the IPR.  That doesn't make it not

7   extortion.  It's difficult to answer that question because

8   certainly no patent statute is going to give rise directly

9   to a cause of action for extortion.  And,

10             Let's be clear.  We haven't asserted a cause

11   of action for extortion.  So whether Virginia recognizes a

12   civil right for extortion is irrelevant.  The predicate act

13   to a civil RICO claim can be a criminal act, so the fact

14   that we couldn't bring a criminal extortion claim is somewhat

15   irrelevant.

16             THE COURT:  Well, at a broader level, the

17   defendants cite a lot of case law, including I think a Tenth

18   Circuit case, which cites a bunch of others, that says even

19   baseless or frivolous litigation cannot be the basis for the

20   type of claim, be it extortion or tortious interference,

21   that you're trying to bring.  Aren't those cases correct?

22             MR. BRAUERMAN:  I wasn't involved in those

23   cases.  Whether they're correct, they are decided.  None

24   of them I believe is binding precedent on Your Honor.

25             The issue there is that, one, this isn't

1    litigation.  This is an administrative proceeding.  None of

2    those claims cover.

3                THE COURT:  Why should that make any difference?

4                MR. BRAUERMAN:  It should make a lot of difference

5    because the point of this -- because they fabricated the right,

6    essentially.  There is no relationship between the parties,

7    even baseless or ultimately unsuccessful litigation.

8                THE COURT:  But, again, you have already

9    acknowledged, I think as you have to, Congress made that

10   decision.  They created this statutory right without a

11   limitation.  Right or wrong, that is the law right now,

12   isn't it?

13               MR. BRAUERMAN:  Yes.

14               THE COURT:  So then to say they didn't have

15   some other interest, I mean as a matter of law they had an

16   interest, the same interest evidently that any one of us

17   shared theoretically.  If we thought this was a patent that

18   should go through IPR, we could attempt to initiate it.

19               MR. BRAUERMAN:  The issue is not the filing of

20   the IPR.  That is not the fraudulent act.  The fraudulent

21   act -- and it's not even the threat of it.  The fraudulent act

22   is that they took simultaneously two inconsistent positions

23   that the patent was valid and that the patent was invalid and,

24   through that, attempted to take valuable property rights that

25   they don't have an entitlement to.  And they don't.  If they

1    pursue the IPR, the best case scenario they get is that it

2    gets invalidated.  It doesn't give them a license and it

3    certainly doesn't give them a transferable license.

4              So what they tried to do was to take a valuable

5    property right belonging to my client that they had no right

6    to take, that they had no right to obtain through the threat

7    of improper action.  And we're beyond a baseless suit.

8    We're in a suit that has a totally different purpose, that

9    its intent is to take the property.  Because they understand

10   the practical realities, the cost and expense of that and

11   the impact it would have on the already pending litigation,

12   and they acknowledge that their business model is to go out

13   and seek nonpracticing entities who are enforcing validly

14   issued patents from the government and try to take those

15   rights from the defendant.  And they try to hold themselves

16   up as the equivalent of an RPX or a unified patent, and they

17   are just not.  That doesn't get them there.  And it doesn't

18   overcome the allegations.

19             Even if it were true, that doesn't get -- even

20   if Your Honor were to accept their argument that they had

21   the right to do this and follow those cases that said that

22   baseless litigation does not give rise to a cause of action,

23   then they still don't address the mail fraud predicate act,

24   they still don't address the wire fraud predicate act, and

25   they still don't address the treble predicate act, so the

1    RICO claim still survives.

2              THE COURT:  But the fraudulent statement that

3    all those rely on is this one sentence in paragraph 5(a),

4    we recognize the patent is valid and yet everything else

5    they're doing is inconsistent with that?

6              MR. BRAUERMAN:  I'm not sure I follow the second

7    half of your statement.

8              THE COURT:  Tell me about the fraudulent portion

9    of the statement.  What is the allegation?  There is mail

10   fraud, wire fraud, or any of the other types of fraud.

11             MR. BRAUERMAN:  Yes.  It's that they transmitted

12   through the mail, or the wire, or both their fraudulent

13   statements contained in their letter, the threats contained

14   in their letter that they would take this action against what

15   they acknowledge is a valid patent in order to essentially

16   take licenses to which they're not entitled that they could

17   then shop to third parties.

18             THE COURT:  So, in your view, the fraud is

19   anything they have said to suggest that the patent is not

20   valid.

21             MR. BRAUERMAN:  While simultaneously

22   acknowledging that it is.  They could have said we don't

23   think your patent is valid but we won't file an IPR if we

24   give you a license.

25             THE COURT:  Do you allege that anywhere they

1    said that the patent is valid other than this paragraph 5 of

2    that first proposed license?

3                 MR. BRAUERMAN:  We have incorporated the letter

4    by reference.  They may have made references to that in

5    the letter, but it would be in the letter and in their

6    agreement.

7                 THE COURT:  The letter says, and I'm looking at,

8    it's Exhibit A to D.I. 1, I think your original complaint.

9    It's probably elsewhere as well:  "Although the validity of

10   the asserted patent is questioned, we wish to acquire

11   retroactive and fully transferable licenses to the asserted

12   patent."

13                I believe that is all they say about the

14   validity of the patent.  I guess at the beginning of the

15   earlier paragraph, they say, "This letter addresses the

16   invalidity of the patent asserted by Chinook against ...,"

17   and then they list a number of defendants in cases pending

18   here.

19                So having tried to recite the letter to you, do

20   you believe that you allege anywhere else that the defendant

21   acknowledges the validity of this patent?

22                MR. BRAUERMAN:  No.  I think, Your Honor, it

23   is from paragraph 5 of the license agreement.  But I don't

24   think we need to address any more of that.  The license --

25   and you don't get to hide behind a settlement agreement just

1   by labeling something a settlement agreement or arguing.

2   And it's not a settlement agreement, it's a license agreement.

3   Either the license agreement is fraudulent or the IPR is

4   fraudulent, because those two statements are inconsistent.

5   But there is nothing about the license agreement that is a

6   settlement agreement.  It's a license agreement.  I think

7   that is a distinction.

8        The other I think factor to consider in that

9   context is in order for their licenses to be valuable or

10  to be able to subsequently transfer them, they can't have

11  hanging out there their public statements that the patents

12  are invalid.  That minimizes the value of their licenses.

13  So it is in their interest, if they're able to extort a

14  license, to change their position and defend the validity of

15  the patent because that is how they're going to make their

16  money on the back end.

17       None of this, by the way, addresses tortious

18  interference.  So even if Your Honor were to find that it

19  didn't constitute extortion, it doesn't address the tortious

20  interference.  The tortious interference acts are alleged in

21  the complaint, and it includes their press release which was

22  certainly seen by the defendants in the litigation and had

23  an impact on it, as we alleged in the complaint.

24       They argue that the state law tortious

25  interference claims are preempted by the federal regulation.

1          They are incorrect.  There is no statute that

2     expressly preempts these state law claims.  In the absence

3     of a statute, preemption occurs when compliance with the

4     statute with state law and federal laws is not possible.  We

5     don't have that here.

6          They rely on the authorizing regulations where

7     the Patent and Trademark Office refused to sanction their

8     conduct.

9          Two points on that:  The first is the

10    proceedings were never initiated.  The Patent and Trademark

11    Office denied their petition to institute the proceedings.

12    Therefore, there cannot be misconduct in the proceedings.

13         Second, the Patent and Trademark Office didn't

14    reach the merits of their action.  They dismissed it on

15    procedural grounds, not on substantive grounds, so there is

16    no second bite at the apple.

17         THE COURT:  Is there anything in the PTO's

18    handling of their IPR that would suggest the PTO believed

19    it to be frivolous, sanctionable, even fraudulent?  Is there

20    anything in how they handled it that would suggest that?

21         MR. BRAUERMAN:  Not other than their denial,

22    but I don't believe that the PTO had knowledge of the

23    extortion that predated the filing of the IPR.  I suspect

24    that those acts were put in front of them as part of the

25    sanctions motion but not as part of the substantive decision

1    on the merits of whether to institute the IPR.

2           They denied to institute the IPR for legal

3    reasons.  They did not reach a conclusion that the filing was

4    frivolous, but there are facts and circumstances surrounding

5    it that I think weigh on that decision that I don't believe,

6    other than through the sanctions conduct, which again the PTO

7    didn't address on the merits, was before the PTO.  I believe

8    it was denied, and I could be wrong about this without a

9    response from the patent holder so I may be incorrect on that,

10   but they denied the institution of the IPR.

11          Now, they are denying more and more, but

12   historically IPRs get granted with fairly high frequency.  I

13   think the Court can conclude that the fact that this one

14   didn't supports our allegation that, by itself, wouldn't

15   be enough but supports our allegations and, read in the

16   entirety of the complaint, is sufficient to survive a motion

17   to dismiss at this stage of the litigation.

18          THE COURT:  Do you allege that no reasonable

19   litigant could have realistically have expected success in

20   the IPR petition?

21          MR. BRAUERMAN:  Not in those words, but I don't

22   believe we're obligated to do so in those words; and I think

23   it is certainly a reasonable inference from saying it is

24   without merit, it is baseless, it is unreasonable that the

25   Court can conclude from that and can infer no reasonable

1    litigant can do it.

2         If the Court finds those magic words are

3    required, then we should be given leave to add them, but

4    that I think elevates form far over substance given it is

5    inconsistent with *Iqbal* and *Twombly* as requirements at the

6    pleading stage.  I think we do in substance allege that,

7    but certainly we did not use those words.

8         THE COURT:  Do you acknowledge you would have to

9    prove that to prevail on all of your claims?

10        MR. BRAUERMAN:  I don't believe to prevail on all

11   of our claims, but certainly to overcome *Noerr-Pennington* we

12   would have to.  I don't think for the tortious interference

13   necessarily we would have to.  It may not be for some of

14   the - I think it can be a fraudulent statement even if an

15   objective person didn't have that, so the mail fraud and

16   wire fraud, predicate acts may still survive.

17        But certainly proving that at trial or getting

18   past summary judgment, if there are no facts in dispute

19   after discovery is found, our ability to overcome that

20   hurdle I think would be difficult in prevailing at least on

21   the extortion based on predicate acts.

22        THE COURT:  Come back to preemption.  You say

23   there is no conflict.  I'm not sure I understand that.  I

24   think you have acknowledged that anyone has the right to

25   file an IPR, even a baseless IPR.  Yet, at the same time,

1   you're turning around and saying that is tortious

2   interference under Virginia common law.  Isn't that a

3   conflict?

4               MR. BRAUERMAN:  No.  No, it's not a conflict.

5   Just because you have a right to enforce something doesn't

6   mean the way in which you exercise that right doesn't create

7   state law claims.

8               This is where I think the *S3 Graphics* case is

9   instructive.  Because there, Your Honor, the complaint

10  asserted both patent infringement claims and state law

11  claims involving conversion and unfair competition.  They

12  were related.  The federal law in that case had also

13  addressed -- and there was an element of marking the patent

14  that was involved in there.  The federal law dealt with

15  marking.  The state law, the patent holder was permitted to

16  bring claims also related to the same underlying fact but

17  under a different cause of action in an unfair competition

18  cause of action.

19              Here, they may have the right to petition the

20  IPR, but that doesn't -- to petition the PTO to institute

21  the IPR.  That doesn't mean that their issuance of a press

22  release, the manner in which they did didn't tortiously

23  interfere with our relationships.  It didn't mean it wasn't

24  a baseless action or we couldn't pursuit it even if sanctions

25  aren't available or were declined to be available in the IPR.

1          The other issue is that it is activity not

2   necessarily limited to the IPR but it is activity that

3   preceded, I think only preceded the institution of the IPR

4   that is the subject of the state law claims and certainly

5   preceded the rejection of the IPR, but there is no federal.

6   But here it's important on preemption to consider intent,

7   too.  Had Congress wanted to preempt all state law remedies

8   here, they had the ability to do that.  They didn't do.

9   That I didn't use the language of exclusivity here.  This

10  court and others and Your Honor in *S3 Graphics* held that

11  federal patent laws don't preempt state law causes of action

12  for conversion and unfair practice.  That same reasoning

13  applies to state law tortious interference claims.

14          There is not -- well, I still don't think it

15  would be preemption, but it would be a more difficult

16  argument if the only basis for the tortious interference

17  claim were the filing of the IPR.  That is not, though.  It

18  is the acts leading up to it.  It is the issuance of the

19  press release which is the act that actually caused the

20  interference.  We allege all of those elements, so we don't

21  believe there is any preemption here.

22          I wanted to add one more point on the

23  *Noerr-Pennington* doctrine, and we cited this case law in our

24  brief.  When the speech itself, the letter, is the vehicle

25  used to commit the fraud, it's not protected.  So it's not

1    protected speech when it's the vehicle of the crime itself.

2    Here, the letter was the vehicle of the crime, and it is not

3    protected as a matter of law.

4            On the point with respect to absolute privilege,

5    absolute privilege applies under Virginia law to defamation

6    actions, not tortious interference claims.  We're not bringing

7    a defamation action.  We're not wrapping a defamation action

8    in a tortious interference claim.  There is no basis to apply

9    the absolute privilege claim.

10           Moreover, the absolute privilege claim only

11   applies when the statement is material, relevant or pertinent

12   to the judicial process.  The letter, which is the basis of

13   the tortious interference claim, and the press release were

14   neither material, relevant or pertinent to the judicial

15   process.

16           Again, it wasn't a judicial process.  It was an

17   administrative -- it was a voluntary administrative process.

18   They were under no threat of harm from Chinook.  They don't

19   make any products.  They were not accused infringers.  They

20   could not have had standing to bring a D.J. action.  There

21   were no claims prior to the letter being sent that could be

22   protected or could be made to which the privilege would have

23   applied.

24           I wanted to address very briefly the motion for

25   leave to amend.

1           Your Honor is well familiar with the standard.

2    Leave is freely given.  There has been no evidence of undue

3    delay, bad faith, dilatory motive or undue prejudice.

4    Rather, they argue futility which is based solely on their

5    motion to dismiss arguments.

6           We, for the reasons we have stated, believe that

7    the first amended complaint survives, should survive the motion

8    to dismiss.  The second amended complaint is not substantively

9    different.  It just adds new facts that occurred following

10   the filing of the first amended complaint, but I don't think

11   it changes Your Honor's analysis.

12          I would say if Your Honor finds, though, that

13   the magic words that no reasonable party could believe that

14   their claims would survive, I don't think *Noerr-Pennington*

15   is that form his tick and Your Honor, in similar factual

16   circumstances, has said that before making that decision in

17   closing the door altogether, discovery should be permitted

18   to go forward.  So at this stage, the Court should deny

19   their motion to dismiss at the pleading stage.

20          I think we have met, both as a matter of fact

21   and a matter of law, the burden under *Iqbal* and *Twombly* to

22   state the claims for which we seek relief.

23          Unless Your Honor has any further questions, I

24   think that is all at this time.

25          THE COURT:  No further questions.  Thank you

1   very much.

2           MR. BRAUERMAN:  Thank you, Your Honor.

3           THE COURT:  We'll hear rebuttal.

4           MR. FINGER:  Thank you, Your Honor.  Hopefully,

5   I'll be brief.

6           On Rule 408, I think Your Honor got the gist.

7   That argument is essentially a red herring.  We're not

8   trying to strike a settlement document from the record.  The

9   408 argument was made basically to point out the policies

10  behind settlement negotiations and their impact on the

11  settlement.

12          Probably the most important point I want to make

13  is it appears that the fraud claim is based on a statement

14  in an unsigned draft settlement proposal or licensing

15  agreement.  While I admit I have not read every case ever

16  written, I would be hard pressed to imagine there is one

17  that says that the parties are bound by, and hoisted by,

18  statements in unsigned contracts.  At that point, their

19  positions, they're not statements of fact.

20          And for the fraud claim, I don't know, they

21  haven't cited any case, I haven't seen any case that says

22  a statement in a draft unsigned contract is a binding

23  admission.  And if mail fraud claims, other claims are based

24  on that, then I think that Your Honor will certainly be

25  making new and probably disturbing law for the transactional

1   lawyers of the world.

2          My friend said that the PTO said that the IPR

3   was baseless.  I respectfully disagree.  They never used

4   that word.  They never said anything close to it.  They said

5   that they disagreed with my client's analysis.  And, again,

6   merely losing is not equivalent of being baseless.

7          Going back to *Noerr-Pennington*.  We again rely

8   on the *City of Newark* case that says there must be not

9   merely a conclusory statement of sham or baselessness but

10  non-conclusory supporting facts.  And,

11         Finally, on preemption.  Again, the language of

12  the regulation encompasses all the elements of pretty much

13  every tort because it says any misuse -- I'm not quoting

14  about any misuse.  But any abuse gives rise to a claim for

15  compensatory damages.

16         So, again, this is a case where the federal

17  regulation, I agree with my colleague there is no express

18  statutory language, but that is not the only way there is

19  preemption.  There is implied preemption, and the test for

20  implied preemption is where the statute regulation corners

21  the market, covers the topic completely, and the language is

22  sufficiently broad in this case that encompasses any tort

23  claim that they could think of.

24         That's all I have, Your Honor.

25         THE COURT:  Thank you.  We'll take a recess.

1    Then we'll come back, and I will give you my ruling.

2                    (Brief recess taken.)

3                    *      *      *

4                    (Proceedings reconvened after recess.)

5                    THE COURT:  Have a seat.

6              The motion was really very well briefed and very

7    well argued this morning.  You answered all the questions I

8    had, so I'm in the position to make a ruling.

9              That ruling is that defendants' motion to dismiss

10   the first amended complaint is granted, plaintiff's motion for

11   leave to file a second amended complaint is denied.  Let me

12   try to explain my reasoning.

13             Initially, I do find that Chinook has standing

14   to bring this case.  It alleges it is injured in its efforts

15   to enforce the '482 patent due to what it characterizes as

16   defendants' extortion and other wrongful conduct; and this

17   point actually now does not seem to be contested.  So my

18   dismissal is not based on a lack of standing.

19             The plaintiff specifically alleges tortious

20   interference under Virginia common law and federal racketeer-

21   ing claims, conspiracy to violate RICO and substantive RICO

22   claim as well.

23             To all these claims, I must apply the Rule

24   12(b)(6) standard which requires the Court to take all well

25   pleaded factual allegations as true and draw all reasonable

1    factual inferences in favor of the plaintiff.

2              Having done so, the Court concludes that

3    plaintiff fails to state a claim on which relief could be

4    granted.  The Court essentially agrees with defendants as

5    they have characterized their arguments today that all of

6    plaintiff's claims are based on two flawed premises:

7              One, that the March 26th letter from the

8    defendants to the plaintiff is extortionate or fraudulent

9    or somehow actionable.  And,

10             Two, that defendants threat to initiate the IPR

11   can constitute extortion, fraud, or otherwise be actionable.

12             I agree with the defendants that all of

13   plaintiff's claims are premised on those two premises, and

14   I agree that those two premises are flawed, which leads to

15   a conclusion that plaintiff's claims are not plausible and

16   therefore fail to state a claim on which relief may be

17   granted.

18             Notably, while the law requires me to, and I do,

19   take all well pleaded factual allegations as true, much of

20   what is alleged here is merely conclusory or stating legal

21   conclusions.  In neither of those categories of allegations

22   do I need to or do I take as true in this context.

23             For instance, the allegation that the settlement

24   letter, and I just mean to call it "the March letter," but

25   the settlement letter or the letter that the plaintiff calls

1    extortionate, by calling it extortion in a complaint, I

2    don't need to take that as true.  That's a legal conclusion.

3         The argument or the allegations that the IPR is

4    baseless or unfounded I find to be merely conclusory and I

5    don't need to take as true.

6         A couple of specific examples from the

7    plaintiff's brief.  In their answering brief at 7, at

8    page 7, the plaintiff says the first amended complaint that

9    the letter is an extortion attempt.  That allegation is

10   sufficient to avoid a motion to dismiss.

11        I disagree with that.

12        Similarly, in the plaintiff's brief at page 12,

13   the plaintiff writes:  The allegation that the letter and the

14   IPR were in bad faith and baseless must be taken as true.

15        Again, I disagree that the law requires me to

16   draw those conclusions even at this stage of the proceeding.

17        Let me talk a little bit more about why I agree

18   with the defendant on the two premises being flawed.

19        First, I'm not persuaded that the letter which on

20   its face states it was sent for settlement purposes only can

21   constitute tortious interference or extortion or fraud in

22   this context.  It's undisputable that public policy favors

23   settlement of disputes.  Here, there is a dispute whether

24   the plaintiff wants to recognize it or not.  Anyone who is

25   attempting to enforce a patent that others believe is invalid

1    is in conflict with any entity who would have any incentive

2    to see that patent invalidated.  So in that context, I don't

3    believe the letter can be the basis for the causes of action

4    that the plaintiff is asserting here.

5              I'm also of the view that the defendants'

6    threat, even viewing it as such, to file an IPR cannot in

7    this context be the basis for the claims the plaintiff is

8    asserting.  There are lots of cases, and they're cited in the

9    defendant's briefing, that hold that the threat of litigation

10   is not extortion.  For example, the Tenth Circuit decision in

11   *U.S. v Pendergraft*.

12             Whether these cases are binding on me or not,

13   they are well reasoned as the legal system is fundamentally

14   where we want disputes such as disputes over the validity

15   of the patent to be resolved.  The legal system in this

16   context includes administrative processes, particularly

17   administrative processes created by Congress.  So even if

18   the 108 page draft IPR or the filed IPR was baseless and

19   unfounded, the IPR process, through both the statute and

20   regulation, has the means to deal with that.  Therefore, the

21   threat and indeed the filing of the IPR, even with all the

22   other allegations, is not a plausible basis for asserting

23   the causes of action that the plaintiff asserts here.

24             I think the strongest point that the plaintiff

25   makes is that the defendant, in its initial proposed license

1    agreement, included a statement that admitted the asserted

2    patent is valid and enforceable.  That's I think paragraph 5

3    of the initial draft license agreement.  From this, the

4    plaintiff argues that the defendant knew that the patent

5    was valid and further knew that all of its efforts and

6    threatened efforts to invalidate the patent were baseless,

7    fraudulent, extortionate because those efforts were based on

8    the diametrically opposed view that the patent is not valid.

9    I think that is the strongest point the plaintiff makes but

10    ultimately does not, on its own or in combination with all

11    the other well pleaded factual allegations, add up to a

12    plausible claim for several reasons.

13           First, the statement in the draft license

14    agreement is actually and indisputably true.  As of the date

15    of the letter, March of 2014, I think it is probably true

16    even today, the patent is valid and enforceable as a matter

17    of law.

18           Second, it was a draft license agreement.  It

19    was not legally binding as a contract on the defendant or,

20    of course, on the plaintiff at that point.  It is quite

21    likely there would have been negotiations and possibly

22    even changes to that language had the parties engaged in

23    negotiation.  But, again, it's a draft license agreement.

24    I think that is notable when considering the plausibility

25    of the plaintiff's allegations.

1          Third, it was attached to a cover letter that

2     expressly stated the validity of the asserted patent is

3     questioned.  The cover letter that also attached the 108

4     panel draft IPR that showed at least one way that the

5     validity of the patent could be questioned.  So in context,

6     it is implausible to think that the plaintiff did not know

7     what the defendants' view was of the validity of the patent.

8     It's implausible to think that the plaintiff or anyone else

9     would have been deceived by the one sentence in the draft

10    license agreement.

11         So for at least those reasons, while this is

12    again I think the strongest point the plaintiff makes, I

13    don't think it adds up in the end.

14         Given my conclusions, I find I need not

15    reach the issues of preemption, the application of the

16    *Noerr-Pennington* doctrine, or the absolute privilege,

17    although I should say I don't reject any of those as

18    additional potential bases to dismiss.  I just say I do

19    not need to reach them because all of the claims are not

20    plausible.  They fail to state a claim for relief given

21    my conclusions that I have already set out.

22         I'll just briefly mention the plaintiff's motion

23    for leave to file a second amended complaint, as I said, is

24    denied.

25         Were I to keep the case, were the case not being

1    dismissed with prejudice, I would grant leave to amend as

2    it would seem in that instance to be fully appropriate to

3    update the factual allegations.  But I think we all agree

4    that given the conclusions I have reached about the flawed

5    premises of the claims, the proposed amended -- proposed

6    second amended complaint is futile for the same reasons that

7    I have given in dismissing and granting the dismissal of the

8    first amended complaint.

9              So we'll get a short order out indicating that

10   these are the rulings I have made.

11             Is there anything further we should talk about

12   while we're together, Mr. Finger?

13             MR. FINGER:  Nothing.  Thank you, Your Honor.

14             THE COURT:  Mr. Brauerman.

15             MR. BRAUERMAN:  Not from the plaintiff, Your

16   Honor.

17             THE COURT:  We will be in recess.  Thank you.

18             (Hearing ends at 10:31 a.m.)

19

20        I hereby certify the foregoing is a true and accurate
     transcript from my stenographic notes in the proceeding.

21

22                           /s/ Brian P. Gaffigan
                           Official Court Reporter
23                           U.S. District Court

24

25